CLARE E. CONNORS #7963
United States Attorney
District of Hawaii

MARGARET C. NAMMAR #9045
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email:  Margaret.Nammar@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 24-00020 LEK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM IN SUPPORT OF |
| | ) | MOTIONS TO DETAIN |
| | ) | DEFENDANTS; CERTIFICATE OF |
| vs. | ) | SERVICE |
| | ) | |
| ANTHONY BRAVO, (01) | ) | |
| LEONARD GUTIERREZ, (02) | ) | |
| aka "Lucky" and "Lenny," | ) | |
| NATHAN AHHOY LEE, (03) | ) | |
| aka "Butch," | ) | |
| JORELYN C. PACARIEM, (04) | ) | |
| aka "Jojo," | ) | |
| DOMINIC GOMES (05) | ) | |
| FAITH MICHELLE NELSON, (06) | ) | |
| TRISH LEILA HENDERSON, (07) | ) | |
| aka "Trish Leila Silva," | ) | |

FRANCIS ANTHONY ABERGAS, JR.,    )
                (08)    )
and    )
KENNARD HINANO BOYD KEKONA,    )
                (09)    )
                     )
         Defendants.    )
                     )
                     )

## MEMORANDUM IN SUPPORT
## OF MOTIONS TO DETAIN DEFENDANTS

The United States of America respectfully submits this memorandum in support of its motions to detain ANTHONY BRAVO, LEONARD GUTIERREZ, also known as "Lucky" and "Lenny," NATHAN AHHOY LEE, also known as "Butch," JORELYN C. PACARIEM, also known as "Jojo," DOMINIC GOMES, FAITH MICHELLE NELSON, TRISH LEILA HENDERSON, also known as "Trish Leila Silva," FRANCIS ANTHONY ABERGAS, JR., and KENNARD HINANO BOYD KEKONA, in the above captioned matter pending trial.  As alleged in the Indictment, and as the government proffers for purposes of a detention hearing:

- All nine defendants are charged in a years-long, multi-defendant drug trafficking conspiracy that was distributing substantial amounts of controlled substances, namely methamphetamine, fentanyl, and carfentanil, throughout the Hawaiian Islands, including Oahu, Kauai, Maui, and Hawaii, and elsewhere on the U.S. Mainland;

2

- BRAVO is the leader/organizer of the drug trafficking organization (DTO) operating from his prison cell at a state prison in California using contraband cellphones; GUTIERREZ is BRAVO's righthand man and manager/supervisor of the DTO outside of the prison and responsible for shipping hundreds of pounds of methamphetamine and kilos of fentanyl and carfentanil to the Hawaiian Islands and elsewhere, and collecting thousands in drug proceeds;

- LEE, PACARIEM, and GOMES are leaders/organizers of their distribution networks on Oahu and Hawaii Island, and were supplied multi-pound shipments of controlled substances from BRAVO and GUTIERREZ through shipping companies, including FedEx and UPS, and then distributing the controlled substances to others on Oahu, Kauai, and Hawaii. They were in turn shipping thousands of dollars in drug proceeds back to California;

- NELSON, HENDERSON, and ABERGAS are leaders/organizers of their distribution networks on Kauai and were supplied pounds of methamphetamine from LEE and PACARIEM through the U.S. mail and other shipping companies. They were then distributing the methamphetamine to others on Kauai and shipping thousands of dollars in cash proceeds back to LEE and PACARIEM on Oahu;

- KEKONA assisted PACARIEM in the storage and distribution of controlled substances on Oahu, including methamphetamine and carfentanil;

- GUTIERREZ, LEE, and ABERGAS possessed firearms and ammunition in connection with their criminal activities, which law enforcement seized from their residences and/or person along with controlled substances;

- The members of the conspiracy used sophisticated evasive measures in conducting their drug trafficking activities, including the regular use of shipping companies, including FedEx, UPS, and the U.S. Postal Service, the use of various names and addresses, and cycling through "burner" phones; and

- Law enforcement seized over 150 pounds of methamphetamine, approximately one kilo of fentanyl and four kilos of carfentanil,

numerous firearms and ammunition, and over $150,000.00 in U.S.
currency, from various locations related to the defendants.

This conduct shows a clear and convincing danger to the community. Indeed,

under the Bail Reform Act, each of the drug charges against the defendants,

standing alone, is presumed to present a danger to the community, and there is no

evidence sufficient to overcome that presumption here. Moreover, this case

involves the distribution of carfentanil. Carfentanil (a fentanyl analogue) is a

synthetic opioid. It is used as a tranquilizing agent for elephants and other large

mammals. The lethal dose range for carfentantil in humans is unknown; however,

carfentanil is approximately 100 times more potent than fentanyl, which can be

lethal at the 2-milliigram range, depending on route of administration and other

factors. https://www.dea.gov/sites/default/files/2018-07/hq092216_attach.pdf.

The defendants are also flight risks. The amount of cash proceeds the

defendants in this case were generating, some of which were intercepted, show that

the defendants likely have access to reserves of illicit cash proceeds from

substantial drug trafficking. More important than financial resources, in light of

the significant charges now pending against the defendants, they have a substantial

motive to flee. Given that the drug charges against the majority, if not all, of the

defendants will likely carry a Guidelines range of around 360 months to life

imprisonment, the defendants have an extraordinarily strong reason to fail to appear in court.

For these reasons, set forth more fully below, the government respectfully submits that all nine defendants should be detained pending trial.

## I.    Procedural and Factual Background

On April 4, 2024, a grand jury returned a sealed 44-count indictment (the "Indictment") charging BRAVO, GUTIERREZ, LEE, PACARIEM, GOMES, NELSON, HENDERSON, ABERGAS, and KEKONA, for their participation in a drug trafficking organization and other crimes.  All nine defendants are charged together in the drug trafficking conspiracy as follows:

- conspiring from at least October 2022, and continuing through on or about the date of the Indictment, to distribute 50 grams or more of methamphetamine; 400 grams or more of a mixture and substance containing fentanyl; and 100 grams or more of a mixture and substance containing carfentanil, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count 1);

- Additionally, BRAVO and GUTIERREZ are charged together in nine substantive counts for distribution of controlled substances, namely 50 grams or more of methamphetamine between approximately June 2023 and October 2023, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Counts 12 through 20); GUTIERREZ is also charged with possession of firearms in furtherance of the drug trafficking conspiracy charged in Count 1 (Count 30)—for two firearms he possessed at his residence (a place where he received and stored controlled substances and cash proceeds) along with approximately fifty pounds of methamphetamine and four kilos of carfentanil, which were recovered pursuant to the execution of a search warrant;

- LEE is also charged with thirteen substantive drug trafficking offenses (Counts 2 through 10, 11, 22, 28, and 31) related to his distribution of approximately 19 pounds of methamphetamine to a cooperating source and undercover law enforcement officer, possession of a firearm in furtherance of drug trafficking (Count 32) for firearms he possessed at his residence along with almost 35 pounds of methamphetamine, and with felon in possession of firearms and ammunition (Count 33);

- PACARIEM is also charged with six substantive drug trafficking offenses (Counts 10, 21, 22, 25 through 28) that include her distribution of pounds of methamphetamine and ounces of carfentanil;

- GOMES is also charged with seven substantive drug trafficking offenses (Counts 34 through 39 and 40) for his receipt of multi-pound shipments of methamphetamine;

- NELSON is also charged with three substantive drug trafficking offenses (Counts 24, 29, and 41) for her receipt and attempted possession of parcels containing pounds of methamphetamine;

- HENDERSON is also charged with two substantive drug trafficking offenses (Counts 24 and 29) for her receipt and attempted possession of parcels containing pounds of methamphetamine;

- ABERGAS is also charged with two substantive drug trafficking offenses (Counts 24 and 42), for his receipt of pounds of methamphetamine, possession of a firearm in furtherance of drug trafficking (Count 43), and with felon in possession of a firearm and ammunition (Count 44); and

- KEKONA is also charged with a substantive drug trafficking offense (Count 27) for his possession of approximately two pounds of methamphetamine and over two ounces of carfentanil, which was seized from him following a traffic stop.

The evidence is strong.  In brief, it includes:

(i) court-authorized Title III interceptions of wire and electronic communications over three separate devices, which captured pertinent conversations of eight of the charged defendants;

(ii) forensic extractions from contraband cellphones belonging to BRAVO, as well as cellphones belonging to GUTIERREZ and GOMES, which contained pertinent text messages, photographs, and other evidence between co-conspirators;

(iii) recordings from controlled purchases of drugs, including nine separate controlled purchases from LEE totaling over nineteen pounds of methamphetamine;

(iv) physical surveillance that law enforcement conducted in coordination with the Title III wiretap interceptions and during controlled purchases of drugs, among other things;

(v) video surveillance that captured activities relevant to drug trafficking;

(vi) walled off traffic stops that resulted in the seizure of pounds of methamphetamine and ounces of carfentanil;

(vii) evidence recovered through the execution of search warrants that resulted in the seizure of pounds of methamphetamine, fentanyl, carfentanil, and firearms and ammunition;

(viii) confidential sources who have provided historical information about some of the defendants' criminal operations and methods; and

(ix) records showing more than fifty drug and money parcels shipped between Hawaii and California over the course of seven months.

As of April 11, 2024, eight of the defendants were arrested on Oahu, Hawaii, and Kauai.  BRAVO remains in custody in California.

## II.    Applicable Law

Under the Bail Reform Act, a court must detain a defendant pending trial if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

When, as here, a defendant is charged in a drug case in which the maximum sentence is ten years or more, there is a rebuttable presumption that there are no condition or combination of conditions that will reasonably assure the safety of any other person and the community.  *See* 18 U.S.C. § 3142(e)(3)(A).

The defendant bears the burden of producing evidence to rebut that presumption.  *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).  Even if the defendant satisfies that burden of production, the presumption does not vanish; instead, it "'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in

§ 3142(g).'" *Id.* (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).  The government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community, *see* 18 U.S.C. § 3142(f)(2)(B), and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight, *see United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990) (citing *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985)).

Section 3142(g) lists the following factors that a court must consider in determining whether detention is required:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves . . . a controlled substance [or] firearm . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person
or the community that would be posed by the person's
release.

18 U.S.C. § 3142(g)(1)-(4).

## III.    Discussion

All nine defendants are charged with serious drug-related offenses that each,

standing alone, warrants a rebuttable presumption under Section 3142(e)(3)(A) that

there is no condition or combination of conditions that will reasonably assure the

appearance of the defendants and the safety of the community.  Moreover, the

factors in 18 U.S.C. § 3142(g) weigh heavily in favor of detention on the grounds

of dangerousness and risk of flight.

### A.    Detention Is Presumptively Necessary

Section 3142(e)(3)(A)'s rebuttable presumption applies here because 39

counts of the Indictment—the drug-related charges in which each defendant is

charged in no less than two counts—each carry a statutory maximum of ten years

or more.  The statutory maximum is life for these offenses—well over the ten years

that would implicate the presumption.  Each defendant is charged in at least two

counts that call for a mandatory minimum of ten years' imprisonment.  Moreover,

GUTIERREZ, LEE, and ABERGAS are each charged with firearm offenses under

18 U.S.C. § 924(c) that carry a mandatory five years' imprisonment, which must

10

be served consecutively to any other sentence imposed.  Accordingly, there is a rebuttable presumption that detention is necessary.

### B.    The Section 3142(g) Factors Weigh in Favor of Detention

None of the defendants can overcome the presumption that applies.  To the contrary, the factors set forth in Section 3142(g) weigh strongly in favor of their pretrial detention on the grounds of dangerousness and risk of flight and would justify detention even if there were no presumption.

#### 1.    The Nature and Circumstances of the Offenses Weigh Strongly in Favor of Detention

##### a.    The Drug Charges Weigh in Favor of Detention

The drug charges in the Indictment are the result of the defendants' involvement in a DTO that pumped pounds of dangerous drugs into the community on Oahu, Kauai, Maui, and Hawaii Island over a significant period of time.  The nature of these offenses weighs strongly in favor of detention.

The circumstances of these drug charges also weigh strongly in favor of detention.  BRAVO and GUTIERREZ are believed to be affiliated with the Mexican Mafia and are charged with distributing substantial amounts of drugs, including the extremely lethal drug carfentanil.  The evidence will show that BRAVO led this operation from his prison cell using contraband cellphones.  Furthermore, the defendants engaged in sophisticated means, including cycling

through "burner" phones, and using various names and addresses to receive their drug shipments.

Evidence of the defendants' leadership roles comes from, among other things, thousands of court-authorized intercepted communications. Law enforcement also seized several of the defendants' cellular phones and obtained warrants to search them, which revealed incriminating text messages and photographs between BRAVO and GUTIERREZ, BRAVO and GOMES, BRAVO and PACARIEM, and GUTIERREZ and PACARIEM, among others.

In November 2023, law enforcement executed search warrants at GUTIERREZ's residence and seized approximately fifty pounds of methamphetamine, four kilos of carfentanil, and firearms and ammunition. Around this same time, law enforcement executed a search warrant at LEE's residence and seized approximately thirty-five pounds of methamphetamine and firearms and ammunition. This is in addition to over thirty pounds of methamphetamine previously seized in the mail and at least $21,000 in drug proceeds, yet this DTO continued to operate with impunity.

### b.    The Firearm Charges Weigh in Favor of Detention

As mentioned above, GUTIERREZ, LEE, and ABERGAS are also charged with the use of firearms in connection with their drug trafficking activities. These firearms were kept on their person and in their residences along with controlled

substances and are detailed in the Indictment in the forfeiture notice.  GOMES was also found to be in possession of firearms on the day of his arrest.  All four of these defendants are prohibited from possessing firearms and ammunition.  Furthermore, these defendants were also using drugs themselves while possessing firearms.  This further underscores the danger that GUTIERREZ, LEE, GOMES, and ABERGAS present to the community.

>        **2.        The Weight of the Evidence Counsels in Favor of Detention**

Although the Ninth Circuit has described the weight of the evidence as the "least important" factor in considering a motion to detain, *United States v. Gebro*, 948 F.2d 1118, 1121 (1991), the weight of the evidence here does further support detention.  The evidence against all nine of the defendants includes, as described above, numerous court-authorized Title III interceptions; physical and video surveillance; walled off traffic stops; shipping records; controlled purchases of drugs; and the seizure of numerous controlled substances and firearms and ammunition.  Confidential sources who are acquaintances of the defendants have also provided law enforcement with historical information about their criminal activities, which information has proved reliable and been corroborated through other evidence developed during the investigation.

Although the evidence against all nine defendants is strong, and this factor also counsels in favor of their detention pending trial.

### 3.    Defendants' History and Characteristics Weigh in Favor of Detention

The history and characteristics of the defendants also weigh in favor of

detention.  All nine of the defendants have numerous prior felony convictions and

significant criminal histories.

BRAVO's criminal history includes (i) 2017 felony conviction for bringing

controlled substance into a prison, sentenced to four years on 08/16/2017; (ii) 2012

arrest/charge for possession of drugs in prison; (iii) 2006 felony convictions for

possession of assault weapon, illegal possession of firearm and ammunition (third

striker), sentenced to life with parole on 04/16/2006; (iv) 2002 and 2005 parole

violations; (v) 1998 felony conviction for burglary 2nd (second striker), sentenced

to four years on 05/07/1998; (vi) 1998 felony conviction for receiving stolen

property (second striker), sentenced to one year and four months on 07/06/1998;

and (vii) July 1993 arrest for murder, disposition – convicted of voluntary

manslaughter and armed with a firearm and sentenced to seven years in prison on

11/01/1994.

GUTIERREZ's criminal history includes (i) 2003 charges for robbery in the

second degree, use of a firearm in the commission of a felony, and evading peace

officer – disposition currently undetermined but he appears to have been sentenced

to 208 months imprisonment; (ii) 1999 felony conviction for possession of

narcotic/controlled substance, sentenced to two years' imprisonment on 02/16/1999; (iii) 1995 felony conviction for grand theft auto, sentenced to four years' imprisonment on 12/20/1995; (iv) 1989 felony conviction for willful child cruelty (injury), sentenced to three years imprisonment on 03/24/1989; (v) 1982 felony convictions for grand theft property and possession of phencyclidine, misdemeanor conviction for burglary, sentenced to 16 months' imprisonment, 365 days jail, and 180 days jail for misdemeanor, and probation reinstated on 11/04/1982; and (vi) 1979 convictions for possession of controlled substance, battery, and taking vehicle without consent, sentenced to 24 months' probation on 10/05/1979.

LEE's criminal history includes (i) March 2014 felony conviction for abuse of a family/household member; (ii) August 2013 felony conviction for escape in the second degree; (iii) April 2000 felony conviction for promoting a dangerous drug in the second degree, sentenced to 20 years', parole revoked in 2007; and (iv) July 1997 and March 1995 misdemeanor convictions for assault in the third degree.

PACARIEM's criminal history includes (i) May 2022 arrest for promotion of a dangerous drug (methamphetamine) in the first degree; (ii) May 2020 parole revocation; (iii) August 2015 felony conviction for escape in the second degree; (iv) February 2008 felony convictions for forgery in the second degree,

unauthorized possession of confidential personal information, and identity theft in the second degree; (v) February 2007 five felony convictions for unauthorized possession of confidential personal information; (vi) December 2006 felony convictions for promoting a dangerous drug in the third degree and prohibited acts related to drug paraphernalia, and petty misdemeanor conviction for promoting a detrimental drug in the third degree; (vii) May 1999 probation revocation/modification; and (viii) May 1999 felony conviction for unauthorized control of propelled vehicle.

GOMES's criminal history includes 6 felony convictions, 35 misdemeanor convictions—31 of which are for criminal contempt, and 13 petty misdemeanor convictions.  His felony convictions include (i) bail jumping in the first degree, sentenced to five years imprisonment on 06/28/2012; (ii) promoting a dangerous drug in the third degree (methamphetamine), ownership/possession of firearm prohibited, sentenced to five years imprisonment to run concurrent on 04/19/2012; and (iii) theft in the second degree, sentenced to five years confinement on 08/10/2006.

NELSON is currently on state probation and her criminal history includes (i) 2022 petty misdemeanor conviction for theft; (ii) February 2021 felony conviction for promoting a dangerous drug 2 (methamphetamine); (iii) June 2019 arrest for promoting a dangerous drug 1, downgraded to possession of one ounce

or more of heroin, disposition "dismissed"; (iv) May 2019 felony conviction for promoting a dangerous drug 3, possess preparation etc. of one-eighth ounce or more methamphetamine; (v) 2007 felony conviction for promoting a dangerous drug 2; and (vi) 1999 felony conviction for burglary 2.

HENDERSON's criminal history includes numerous arrests on drug related charges, including (i) March 2014 arrest for promoting a dangerous drug 2 and 3, disposition "dismissed"; and (ii) September 2013 arrest for prohibited acts related to drug paraphernalia and theft 4, disposition "prosecution was declined."  She has a prior felony conviction for promoting a dangerous drug 3 in 1999.

ABERGAS's criminal history includes (i) February 2023 arrest and charge for promoting a dangerous drug 2 (methamphetamine); (ii) 2009 felony conviction for escape 2; and (iii) 2000 felony convictions for possession of prohibited weapon, theft in the first and second degrees, promoting a dangerous drug 3.

KEKONA's criminal history includes nine felony convictions, one misdemeanor conviction, and one petty misdemeanor conviction.  His felony convictions are for (i) unauthorized control of a vehicle, sentenced on 12/28/11; (ii) attempted theft in the second degree, two counts of forgery in the second degree, sentenced to five years' imprisonment on 11/12/03; and (iii) promoting a dangerous drug in the third degree (methamphetamine), drug paraphernalia,

sentenced on 08/19/03, resentenced on 01/27/05 amended to five years

imprisonment.

### 4.    The Nature and Seriousness of the Danger that the Defendants Pose Weighs in Favor of Detention

As discussed above, the defendants present a substantial danger in at least

two ways.  First, there is a danger that they will continue to harm the community

through drug trafficking.  BRAVO, GUTIERREZ, LEE, PACARIEM, GOMES,

NELSON, HENDERSON, ABERGAS, and KEKONA have all continued to traffic

controlled substances despite being previously caught by law enforcement.

Moreover, at the time of their arrests, several of the defendants were found in

possession of controlled substances, including GUTIERREZ (approximately 36

grams of black tar heroin), LEE (approximately five pounds of methamphetamine),

NELSON (approximately 40 grams of methamphetamine), HENDERSON

(approximately 338 grams of methamphetamine), and ABERGAS (approximately

74 grams of methamphetamine).

Second, there is the danger they present to confidential sources who

provided information to the government during the investigation and others

cooperating with the government.  Both of these considerations weigh strongly in

favor of pretrial detention.

### 5.    Defendants are a Flight Risk

All nine defendants are also flight risks because of the serious penalties they face.  The amount of controlled substances this DTO was trafficking would result in an offense level of 38, the highest offense level under U.S.S.G. § 2D1.1(c).  In addition, firearms were possessed in connections with the offenses and almost all of the defendants should receive increases for being an organizer, leader, manager, or supervisor of a criminal activity that involved five or more participants or was otherwise extensive, under U.S.S.G. § 3B1.1.  Even assuming a Criminal History Category of I, which likely none of the defendants will fall into, the minimum Guidelines range for any defendant will be 235 to 293 months.  In the face of that extraordinarily serious potential punishment, the defendants have an extraordinarily strong motive to flee.

Furthermore, as set forth above, LEE has a prior conviction for escape and GOMES has a prior conviction for bail jumping and 31 convictions for criminal contempt of court.  Moreover, at the time of their arrests both NELSON and ABERGAS attempted to flee from law enforcement.  And during the course of the court-authorized interceptions, when PACARIEM became suspicious that law enforcement may be tracking her criminal activities, she moved from location to location and was intercepted making plans to leave the island.

19

## IV.    Conclusion

For the foregoing reasons, the United States of America respectfully requests

that the Court grant its motions to detain the defendants pending trial.

DATED:  April 12, 2024, Honolulu, Hawaii.

Respectfully Submitted,

CLARE E. CONNORS
United States Attorney
District of Hawaii

By  */s/ Margaret C. Nammar*
    MARGARET C. NAMMAR
    Assistant U.S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the date noted below, a true and correct copy of the

foregoing was served on all parties via CM/ECF.

DATED:  April 12, 2024, at Honolulu, Hawaii.

<u>*/s/ Margaret C. Nammar*</u>
MARGARET C. NAMMAR
Assistant U.S. Attorney