ORIGINAL

KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii

WAYNE A. MYERS
Chief, General Crimes

MARGARET C. NAMMAR #9045
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email:    Margaret.Nammar@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 2 8 2025

at 3 o'clock and 10 min. P M
Lucy H. Carrillo, Clerk

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 24-00020-03 LEK-WRP |
| | ) |
| Plaintiff, | ) MEMORANDUM OF PLEA |
| | ) AGREEMENT |
| vs. | ) |
| | ) DATE: April 28, 2025 |
| NATHAN AHHOY LEE, | ) TIME: 2:30 P.M. |
| aka "Butch," | ) JUDGE: Hon. Leslie E. Kobayashi |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the Acting United States

Attorney for the District of Hawaii ("the United States Attorney"), and the

defendant, NATHAN AHHOY LEE, and his attorney, Myles S. Breiner, Esq.,
have agreed upon the following:

## THE CHARGES

1.    The defendant acknowledges that he has been charged in the
Indictment with violating Title 21, United States Code, Sections 841(a)(1),
841(b)(1)(A), and 846 and Title 18, United States Code, Sections 922(g)(1),
924(a)(8), and 924(c)(1)(A)(i).

2.    The defendant has read the charges against him contained in the
Indictment, and those charges have been fully explained to him by his attorney.

3.    The defendant fully understands the nature and elements of the crimes
with which he has been charged.

## THE AGREEMENT

4.    The defendant will enter a voluntary plea of guilty to Counts 1, 31,
and 32 of the Indictment, which charge him with conspiring to distribute and
possess with intent to distribute controlled substances, namely (a) 50 grams or
more of methamphetamine; (b) 400 grams or more of a mixture and substance
containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]
propanamide, commonly known as fentanyl; and (c) 100 grams or more of a
mixture or substance containing a detectable amount of carfentanil, and an
analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl)

2

(Count 1), possession with intent to distribute 50 grams or more of methamphetamine (Count 31), and possession of a firearm in furtherance of a drug trafficking crime (Count 32).   In return, the United States Attorney's Office for the District of Hawaii ("the government") agrees to move to dismiss Counts 2 through 11, 23, 28, and 33 of the Indictment as to the defendant after sentencing.

5.     The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.     The defendant enters this plea because he is in fact guilty of conspiring to distribute and possess with intent to distribute controlled substances, namely 50 grams or more of methamphetamine (Count 1), possessing with intent to distribute 50 grams or more of methamphetamine (Count 31), and possessing a firearm in furtherance of a drug trafficking crime (Count 32) as charged in Counts 1, 31, and 32 of the Indictment, and he agrees that this plea is voluntary and not the result of force or threats.

## PENALTIES

7.     The defendant understands that the penalties for the offenses to which he is pleading guilty include:

a.     As to Counts 1 and 31, a term of imprisonment of not less than 10 years and not more than life and a fine of up to $10,000,000, plus a term of supervised release of not less than 5 years and up to life.

3

b.    As to Count 32, a term of imprisonment of not less than 5 years

and up to life, which must be served consecutively to any other sentence imposed

on the defendant, and a fine of up to $250,000, plus a term of supervised release of

up to 5 years.

c.    In addition, the Court must impose a $100 special assessment as

to each count to which the defendant is pleading guilty.   The defendant agrees to

pay $100 for each count to which he is pleading guilty to the District Court's

Clerk's Office, to be credited to said special assessments, before the

commencement of any portion of sentencing.   The defendant acknowledges that

failure to make such full advance payment in a form and manner acceptable to the

prosecution will allow, though not require, the prosecution to withdraw from this

Agreement at its option.

d.    **Forfeiture.**    Pursuant to 21 U.S.C. § 853, forfeiture of any

(1) property constituting, or derived from, proceeds the person obtained, directly or

indirectly, as the result of a violation of the provisions of 21 U.S.C. §§ 801 et seq.

or 21 U.S.C. §§ 951 et seq.; and (2) property used, or intended to be used, in any

manner or part, to commit, or to facilitate the commission of, such violation.

Pursuant to 18 U.S.C. § 924(d), forfeiture of any firearm(s) or ammunition subject

to forfeiture pursuant to 18 U.S.C. § 924(d).

4

e.    **Loss of Federal Benefits.**    At the discretion of the Court, the

defendant may also be denied any or all federal benefits, as that term is defined in

Title 21, United States Code, Section 862, (a) for up to five years if this is the

defendant's first conviction of a federal or state offense amounting to the

distribution of controlled substances, or (b) for up to ten years if this is the

defendant's second conviction of a federal or state offense consisting of the

distribution of controlled substances.    If this is the defendant's third or more

conviction of a federal or state offense amounting to the distribution of controlled

substances, the defendant is permanently ineligible for all federal benefits, as that

term is defined in Title 21, United States Code, Section 862(d).

## FACTUAL STIPULATIONS

8.    The defendant admits the following facts and agrees that they are not

a detailed recitation, but merely an outline of what happened in relation to the

charges to which the defendant is pleading guilty:

a.    By at least October 2022, and continuing until around April 4,

2024, there existed a conspiracy within the District of Hawaii and elsewhere to

distribute and possess with intent to distribute controlled substances.    Participants

in this conspiracy included Nathan Ahhoy Lee, aka "Butch" (hereinafter referred to

as "Lee" or "the defendant"), Shawn Santana ("Santana") (charged elsewhere),

Anthony Bravo ("Bravo"), Leonard Gutierrez, aka "Lucky" and "Lenny"

("Gutierrez"), Jorelyn C. Pacariem, aka "Jojo" ("Pacariem"), Faith Michelle

Nelson ("Nelson"), Trish Leila Henderson, aka "Trish Leila Silva" ("Henderson"),

Francis Anthony Abergas, Jr. ("Abergas"), Kennard Hinano Boyd Kekona

("Kekona"), Douglas Manago ("Manago") (charged elsewhere), and others.   Lee

understood and agreed that the conspiracy involved the possession with intent to

distribute and the distribution of more than 50 grams of methamphetamine.

   b. Lee had agreements with several individuals, including Santana

and Bravo to supply him with pound quantities of methamphetamine for further

distribution in Hawaii.   The methamphetamine was shipped to Hawaii in parcels

through the U.S. mail and would typically be "fronted" (provided on consignment)

to Lee.   In return, Lee would send the proceeds from the sale of the

methamphetamine to Santana or Bravo and/or Gutierrez.   During the period of the

conspiracy, until approximately the end of June 2023, Santana was supplying Lee

with pound quantities of methamphetamine.   Beginning by at least June 2023,

Bravo began supplying Lee with pound quantities of methamphetamine.

   c. Throughout the entirety of the charged conspiracy, Lee had an

agreement with Pacariem to possess and distribute pound quantities of

methamphetamine.   Once the controlled substances arrived in Hawaii, Lee and/or

Pacariem would store the controlled substances until they were distributed.   Lee

and Pacariem worked both individually and together to distribute the controlled

substances to their sub-distributors, including Nelson, Henderson, Abergas, Manago, and others.   After receiving and further distributing the controlled substances, Nelson, Henderson, Abergas, Manago, and others would then provide Lee and/or Pacariem with the proceeds from the sale of the controlled substances. Lee and/or Pacariem would in turn send the proceeds to Bravo and/or Gutierrez.

          d.     Lee also recruited and directed others to receive parcels containing methamphetamine and to ship parcels containing both methamphetamine and cash proceeds on his behalf.

          e.     On approximately May 9, 2023, Lee shipped a parcel containing $31,820 in United States currency to Santana at his residence in Las Vegas, Nevada.   The $31,820 was cash proceeds from the sale of methamphetamine and intended for the purchase of additional methamphetamine. On approximately June 20, 2023, Santana had approximately 13 pounds of methamphetamine shipped to Lee in Hawaii.   On approximately June 21, 2023, law enforcement intercepted the parcel and obtained a search warrant.   The search resulted in the seizure of approximately 13 pounds of methamphetamine.   The methamphetamine was sent to the Drug Enforcement Administration ("DEA") laboratory for testing and analysis, which confirmed 5,817 grams of pure methamphetamine hydrochloride.

       f.      During the period of the conspiracy and in furtherance of his drug trafficking, Lee knowingly and intentionally possessed a short barreled rifle, Privately Made Firearm (PMF), 12.7mm caliber, with no serial number; a Ruger pistol, Model EC9s, 9mm caliber, bearing serial number 458-73347; a rifle, Henry Repeating Arms, Model Henry Classic Lever Action, .22 Short (S)/.22 Long Rifle (LR) caliber, bearing serial number 544763H; one metal Ruger brand magazine; and two rounds of 9mm ammunition (one round of Blazer and one round of Speer). Lee possessed these firearms and ammunition in furtherance of the charged drug trafficking conspiracy, specifically, for his personal protection against assault and protection against theft of his controlled substances and cash proceeds.   The firearms and ammunition, along with approximately 35 pounds of methamphetamine, were seized by law enforcement pursuant to a search warrant executed at Lee's residence on or about November 29, 2023.   Lee knowingly possessed the methamphetamine with the intent of distributing it to others.   The methamphetamine seized from Lee's residence was sent to the DEA laboratory for testing and analysis, which confirmed approximately 15,075.53 grams of pure methamphetamine hydrochloride.

       g.      In furtherance of the charged drug trafficking conspiracy, Lee distributed to a confidential informant working with the Federal Bureau of Investigation ("FBI") or an undercover law enforcement officer 50 grams or more

of methamphetamine on each of November 2, 2022, December 22, 2022, February 6, 2023, April 20, 2023, May 5, 2023, June 2, 2023, July 6, 2023, September 6, 2023, and September 28, 2023.   In exchange for the methamphetamine received during these nine controlled purchases from Lee, the FBI paid Lee via the confidential informant and/or undercover law enforcement officer a total of approximately $78,400 in United States currency, which Lee admits are proceeds of the charged drug trafficking conspiracy.

        h.     Lee admits that approximately $109,098.00 in United States currency seized at the time of his arrest on or about April 9, 2024, are proceeds of the charged drug trafficking conspiracy.

     9.     Pursuant to Section 6B1.2 of the Sentencing Guidelines, the parties agree that the charges to which the defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

     10.     Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

        a.     The applicable guideline is U.S.S.G. § 2D1.1.

      b.    The defendant is directly responsible for more than 4.5 kilograms of Methamphetamine (actual). Accordingly, his Base Offense Level is 38. U.S.S.G. § 2D1.1.

      c.    The defendant was an organizer or leader of a criminal activity that involved five or more participants and was otherwise extensive. Accordingly, his offense level should be increased by 4 levels. *See* U.S.S.G. § 3B1.1(a).

      d.    As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility. If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate. *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

      e.    The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant. Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b), if the defendant is

10

otherwise eligible.    The defendant understands that notwithstanding its present

intentions, and still within the Agreement, the prosecution reserves the rights (1) to

argue to the contrary in the event of receipt of new information relating to those

issues, and (2) to call and examine witnesses on those issues in the event that either

the United States Probation Office finds to the contrary of the prosecution's

intentions or the Court requests that evidence be presented on those issues.

11.    The parties agree that notwithstanding the parties' Agreement herein,

the Court is not bound by any stipulation entered into by the parties but may, with

the aid of the presentence report, determine the facts relevant to sentencing.    The

parties understand that the Court's rejection of any stipulation between the parties

does not constitute a refusal to accept this Agreement since the Court is expressly

not bound by stipulations between the parties.

12.    The parties represent that as of the date of this agreement there are no

material facts in dispute.

## APPEAL/COLLATERAL REVIEW

13.    The defendant is aware that he has the right to appeal his conviction

and the sentence imposed.    The defendant knowingly and voluntarily waives the

right to appeal, except as indicated in subparagraph "b" below, his conviction and

any sentence within the Guidelines range as determined by the Court at the time of

sentencing, and any lawful restitution or forfeiture order imposed, or the manner in

11

which the sentence, restitution, or forfeiture order was determined, on any ground
whatsoever, in exchange for the concessions made by the prosecution in this
Agreement.   The defendant understands that this waiver includes the right to
assert any and all legally waivable claims.

   a. The defendant also waives the right to challenge his conviction
or sentence or the manner in which it was determined in any collateral attack,
including, but not limited to, a motion brought under Title 28, United States Code,
Section 2255, except that the defendant may make such a challenge (1) as
indicated in subparagraph "b" below, or (2) based on a claim of ineffective
assistance of counsel.

   b. If the Court imposes a sentence greater than specified in the
guideline range determined by the Court to be applicable to the defendant, the
defendant retains the right to appeal the portion of his sentence greater than
specified in that guideline range and the manner in which that portion was
determined and to challenge that portion of his sentence in a collateral attack.

   c. The prosecution retains its right to appeal the sentence and the
manner in which it was determined on any of the grounds stated in Title 18, United
States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

14.    In connection with the collection of restitution or other financial obligations, including forfeiture as set forth below, that may be imposed upon him, the defendant agrees as follows:

a.    The defendant agrees to fully disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including any assets held by a spouse, nominee, or third party.    The defendant understands that the United States Probation Office (USPO) will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement.    To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United States Attorney's Office.    The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.    The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office.    The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.    The

13

defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

          b.     The defendant expressly authorizes the United States Attorney's Office to obtain his credit report.   The defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing.   The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

          c.     Prior to sentencing, the defendant agrees to notify the Financial Litigation Unit of the U.S. Attorney's Office before making any transfer of an interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

## FORFEITURE

15.    As part of his acceptance of responsibility and pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 924(d), the defendant agrees as follows:

     a.    The defendant agrees to forfeit to the United States al of his right, title, and interest in the following property (the "Specific Property"):

     i.    Approximately $109,098.00 in United States currency seized from the defendant at the time of his arrest on or about April 9, 2024; and

     ii.    A short barreled rifle, Privately Made Firearm (PMF), 12.7mm caliber, with no serial number; a Ruger pistol, Model EC9s, 9mm caliber, bearing serial number 458-73347; a rifle, Henry Repeating Arms, Model Henry Classic Lever Action, .22 Short (S)/.22 Long Rifle (LR) caliber, bearing serial number 544763H; one metal Ruger brand magazine; and two rounds of 9mm ammunition (one round of Blazer and one round of Speer) all seized from the defendant's residence, on or about November 29, 2023.

     b.    The defendant acknowledges that the Specific Property is subject to forfeiture pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 924(d) as (1) property constituting, or derived from, proceeds the person obtained, directly or indirectly, as the result of a violation of the provisions of 21 U.S.C. §§ 801 et seq. or 21 U.S.C. §§ 951 et seq.; and (2) property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.   The defendant acknowledges that the above described firearms and ammunition are subject to forfeiture also pursuant to 18 U.S.C. § 924(d) as firearms or ammunition subject to forfeiture pursuant to 18 U.S.C. § 924(d).

c.     The defendant knowingly and voluntarily waives and agrees to

waive any and all constitutional, statutory, and other challenges to the forfeiture on

any and all grounds, including that the forfeiture constitutes an excessive fine or

punishment under the Eighth Amendment.   The defendant knowingly and

voluntarily waives any right to a jury trial on the forfeiture of property.

d.     The defendant agrees to consent promptly upon request to the

entry of any orders deemed necessary by the government or the Court to complete

the forfeiture and disposition of the property.   The defendant waives the

requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure

regarding notice of forfeiture in the charging instrument, announcement of

forfeiture at sentencing, and incorporation of the forfeiture in the judgment.   The

defendant acknowledges that he understands that the forfeiture of the property, if

the government elects to conduct the forfeiture criminally, will be part of the

sentence imposed upon the defendant in this case and waives any failure by the

Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J) of the Federal

Rules of Criminal Procedure, during the change of plea hearing.   Pursuant to Rule

32.2(b)(4) of the Federal Rules of Criminal Procedure, the defendant consents to

the preliminary order of forfeiture for the Specific Property and the Forfeiture

Money Judgment becoming final as to the defendant when entered.

16

e.    The defendant agrees to waive all interest in the Specific

Property in any administrative or judicial forfeiture proceeding, whether criminal

or civil, state or federal, and to withdraw any claim that the defendant may have

filed in such a proceeding.   The defendant further waives any other notice

requirement that may apply to the administrative and/or civil forfeiture of the

Specific Property.

f.    The defendant understands that the forfeiture of the forfeitable

property does not constitute and will not be treated as satisfaction, in whole or in

part, of any fine, restitution, reimbursement of cost of imprisonment, or any other

monetary penalty this Court may impose upon the defendant in addition to the

forfeiture.

## IMPOSITION OF SENTENCE

16.    The defendant understands that the District Court in imposing

sentence will consider the provisions of the Sentencing Guidelines.   The defendant

agrees that there is no promise or guarantee of the applicability or non-applicability

of any Guideline or any portion thereof, notwithstanding any representations or

predictions from any source.

17.    The defendant understands that this Agreement will not be accepted or

rejected by the Court until there has been an opportunity by the Court to consider a

presentence report, unless the Court decides that a presentence report is

17

unnecessary.  The defendant understands that the Court will not accept an

agreement unless the Court determines that the remaining charges adequately

reflect the seriousness of the actual offense behavior and accepting the Agreement

will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

18.    The defendant understands that by pleading guilty he surrenders

certain rights, including the following:

a.    If the defendant persisted in a plea of not guilty to the charges

against him, then he would have the right to a public and speedy trial.  The trial

could be either a jury trial or a trial by a judge sitting without a jury.  The

defendant has a right to a jury trial.  However, in order that the trial be conducted

by the judge sitting without a jury, the defendant, the prosecution, and the judge all

must agree that the trial be conducted by the judge without a jury.

b.    If the trial is a jury trial, the jury would be composed of twelve

laypersons selected at random.  The defendant and his attorney would have a say

in who the jurors would be by removing prospective jurors for cause where actual

bias or other disqualification is shown, or without cause by exercising peremptory

challenges.  The jury would have to agree unanimously before it could return a

verdict of either guilty or not guilty.  The jury would be instructed that the

defendant is presumed innocent, and that it could not convict him unless, after

hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

       c.     If the trial is held by a judge without a jury, the judge would

find the facts and determine, after hearing all the evidence, whether or not he or

she was persuaded of the defendant's guilt beyond a reasonable doubt.

       d.     At a trial, whether by a jury or a judge, the prosecution would

be required to present its witnesses and other evidence against the defendant.   The

defendant would be able to confront those prosecution witnesses and his attorney

would be able to cross-examine them.   In turn, the defendant could present

witnesses and other evidence on his own behalf.   If the witnesses for the defendant

would not appear voluntarily, the defendant could require their attendance through

the subpoena power of the Court.

       e.     At a trial, the defendant would have a privilege against

self-incrimination so that he could decline to testify, and no inference of guilt

could be drawn from his refusal to testify.

       f.     At a trial, the defendant would have a right to have the jury

determine beyond a reasonable doubt the quantity and weight of the controlled

substance charged in the Indictment necessary to establish the statutory mandatory

minimum penalty or an increased statutory maximum penalty.

19.    The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

20.    If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the defendant later proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn.   The _only_ exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it. Under those circumstances, the United States may not use those statements of the defendant for any purpose.

21.    The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the

20

defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

## COOPERATION

22.    The defendant agrees that he will fully cooperate with the United States.

a.    The defendant agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving co-defendants and others charged later in the investigation, sentencing hearings, and related civil proceedings.

b.    The defendant agrees to be available to speak with law enforcement officials and representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

c.    The defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes charged in this Indictment or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

21

        d.     The defendant agrees that his sentencing date may be delayed based on the government's need for the defendant's continued cooperation, and agrees not to object to any continuances of the defendant's sentencing date sought by the United States.

        e.     The defendant agrees to not violate any federal, state, or local law between the time the defendant signs this Agreement and the date of sentencing.

        f.     Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

    23.    In the event that the defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after the defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case-in-chief in the trial of the defendant in this matter. The defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

22

24.    Pursuant to Guidelines § 5K1.1 and Rule 35(b) of the Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.   Pursuant to Title 18, United States Code, Section 3553(e), the prosecution may also move the Court to impose a sentence below the level established by statute as a minimum sentence for Counts 1, 31, and 32 on the ground that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.   The defendant understands that:

a.    The decision as to whether to make such a request or motion is entirely up to the prosecution.

b.    This Agreement does not require the prosecution to make such a request or motion.

c.    This Agreement confers neither any right upon the defendant to have the prosecution make such a request or motion, nor any remedy to the defendant in the event the prosecution fails to make such a request or motion.

d.    Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

23

25.   The defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

26.   To become effective, this Agreement must be signed by all signatories listed below.

//

//

//

//

//

//

//

//

//

//

//

24

27.    Should the Court refuse to accept this Agreement, it is null and void

and neither party shall be bound thereto.

AGREED:

KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii


WAYNE A. MYERS                          Dated: ___4/14/25___
Chief, General Crimes


MARGARET C. NAMMAR                      Dated: ___4/14/25___
Assistant U.S. Attorney


NATHAN AHHOY LEE                        Dated: ___4/11/25___
Defendant


MYLES S. BREINER                        Dated: ___4/11/25___
Attorney for Defendant


25